11-3999-cr
United States v. Weingarten

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2012

(Argued: December 18, 2012     Decided: April 16, 2013)

Docket No. 11-3999-cr

———————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

ISRAEL WEINGARTEN,

*Defendant-Appellant*.

———————

B e f o r e :

CALABRESI, LIVINGSTON, and LYNCH, *Circuit Judges*.

———————

Defendant-appellant Israel Weingarten appeals from his conviction in the Eastern District of New York (John Gleeson, *Judge*) on two counts of transporting a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) and two counts of travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and his sentence to thirty years' imprisonment. We conclude that the district

1

court properly resentenced Weingarten after one of the initial five counts was vacated, and AFFIRM the judgment.

———————

MARK M. BAKER, Brafman & Associates, PC, New York, New York, *for Defendant-Appellant*.

ANDREA GOLDBERG, Assistant United States Attorney (Jo Ann M. Navickas and Rachel J. Nash, Assistant United States Attorneys, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Appellee*.

———————

GERARD E. LYNCH, *Circuit Judge*:

At his trial in 2009, Defendant-appellant Israel Weingarten was convicted by a jury in the United States District Court for the Eastern District of New York (John Gleeson, *Judge*) of two counts of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and three counts of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).  On May 8, 2009, he was sentenced to thirty years' imprisonment.  One of the § 2423(b) counts was subsequently vacated on appeal, and Weingarten was then resentenced to thirty years in prison on September 12, 2011.  Weingarten raises several challenges to the September 12, 2011 judgment.  He argues first that § 2423(b) is a lesser included offense of § 2423(a), and that consecutive sentences for the two subsections therefore violate the prohibition on double jeopardy; second, that consecutive sentences for the convictions are based on the same conduct and that the offenses should be merged to prevent

2

"pyramiding penalties"; and third, that absent intervening circumstances, where one count is vacated, an increased sentence on the remaining counts violates due process. We are not persuaded by any of Weingarten's arguments, and AFFIRM the judgment of the district court.

## BACKGROUND

The underlying facts are described in our prior opinion disposing of Weingarten's first appeal. See United States v. Weingarten, 632 F.3d 60 (2d Cir. 2011). We here discuss only the facts necessary to decide the instant appeal.

After sexually abusing his minor daughter for more than six years in three different countries, Weingarten was convicted by a jury of two counts of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and three counts of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). Count One was based on Weingarten's transportation of his daughter from Israel to Brooklyn, and Count Two on his transporting her from Brooklyn to Belgium. Count Three involved Weingarten's travel from Belgium to Israel, Count Four from Israel to Brooklyn, and Count Five from Brooklyn to Belgium. Counts One and Four were therefore both based on Weingarten's trip with his daughter from Israel to Brooklyn, while Counts Two and Five were both based on their trip from Brooklyn to Belgium.

On May 8, 2009, Weingarten was sentenced to thirty years' imprisonment: ten years on each of the five counts, with the sentences pursuant to Counts One to Three – the

3

two counts under § 2423(a) and the first count under § 2423(b) – to run consecutively, and the sentences pursuant to the remaining two counts to run concurrently. Id. at 61. On appeal, we vacated Count Three because the underlying conduct lacked a sufficient territorial nexus to the United States, and remanded for resentencing on the four remaining counts. Id. at 62.

On September 12, 2011, the district court resentenced Weingarten to the same aggregate sentence of thirty years' imprisonment on the remaining four counts. As before, the district court sentenced Weingarten to ten years' imprisonment on each count, but changed Count Four's sentence from a concurrent term to a consecutive term. Weingarten appeals his new sentence on the grounds discussed below.

## DISCUSSION

### I. Double Jeopardy

Weingarten argues that § 2423(b) is a lesser included offense of § 2423(a), and that consecutive sentences for the two subsections based on the same facts violate the Double Jeopardy Clause. We disagree.

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and prohibits multiple punishments for the same offense. "[T]he standard for analyzing whether offenses are the same in law is the same-elements test established in Blockburger v. United States, [284 U.S. 299, 304 (1932)]," United States v. Basciano, 599 F.3d 184, 196-97 (2d Cir. 2010), which is "a rule for divining congressional intent,"

4

Lewis v. United States, 523 U.S. 155, 182 (1998), citing Missouri v. Hunter, 459 U.S. 359, 366-67 (1983). The Blockburger inquiry "asks whether 'each offense contains an element not contained in the other,' and provides that, if not, 'they are the same offence and double jeopardy bars additional punishment and successive prosecution.'" Basciano, 599 F.3d at 197, quoting United States v. Dixon, 509 U.S. 688, 696 (1993). "[I]f each section requires proof of at least one fact that the other does not, there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both. In that circumstance, the imposition of multiple punishments does not violate the Double Jeopardy Clause." United States v. Khalil, 214 F.3d 111, 118 (2d Cir. 2000). We review double jeopardy challenges to a sentence de novo. United States v. Maslin, 356 F.3d 191, 196 (2d Cir. 2004).

As noted above, § 2423(a) criminalizes "transport[ing] [a minor] in interstate or foreign commerce . . . with intent that the [minor] engage in . . . [criminal] sexual activity," while § 2423(b) criminalizes "travel[ing] in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person."[1] Weingarten argues that "transport[ing]" in § 2423(a) connotes the accused's actually carrying or accompanying the contemplated victim – in other words, that to "transport" someone, one must physically accompany her to her destination. Under this interpretation, to "transport"

---

[1] The prohibition of travel in foreign commerce applies only to United States citizens or permanent resident aliens. Weingarten is a United States citizen.

5

encompasses the act of "travel[ing]," making § 2423(b) a lesser included offense of §

2423(a), as one could not violate subsection (a) without also violating subsection (b).

Weingarten's argument rests on an unduly restrictive interpretation of "transport."

In United States v. Holland, we stated that a defendant would be "deemed to have

'transport[ed]' an individual" under a similarly worded section of the Mann Act[2] "where

the evidence shows that the defendant personally *or through an agent* performed the

proscribed act of transporting." 381 F.3d 80, 86 (2d Cir. 2004) (alteration in original)

(emphasis added) (internal quotation marks omitted).[3] If a defendant can transport

someone by entrusting her to an agent, then he can transport her without physically

accompanying her. See United States v. Johnson, 132 F.3d 1279, 1285 (9th Cir. 1997)

(affirming conviction under § 2423(a) of a defendant who caused the transport of a minor,

although the defendant had not traveled with the minor himself).

---

[2] Holland involved 18 U.S.C. § 2421, which criminalizes "knowingly transport[ing] any individual . . . with intent that such individual" engage in illicit sexual acts.

[3] Other circuits have similarly construed the Mann Act. See United States v. Jones, 909 F.2d 533, 540 (D.C. Cir. 1990) ("We accept the Government's implicit premise that one need not physically carry or accompany a person interstate in order to 'transport' her; it may be enough effectively to cause her to be transported, as would clearly be the case if one were to commission another to abduct her."); Ege v. United States, 242 F.2d 879, 880-81 (9th Cir. 1957) (holding that "when the man puts up the money in advance, when it is used for the interstate trip by the woman in accordance with his plan, when he has persuaded and induced her to make the trip for the purposes of prostitution, he has also caused the woman to be transported in violation of § 2421").

Since one can transport a victim without physically accompanying her, § 2423(a) and § 2423(b) each require proof of an element that the other does not. Under § 2423(a), the government must prove that the defendant transported a minor in foreign commerce, while § 2423(b) does not require proof of transportation of anyone. Under § 2423(b), the government must prove that the defendant himself traveled in foreign commerce with the purpose of engaging in illicit sexual conduct, while § 2423(a) does not require proof that the defendant himself traveled anywhere, or that he himself intended to engage in illicit sexual conduct with the victim. The two subsections therefore describe distinct offenses, and Weingarten's separate convictions and consecutive sentences for violating both provisions do not violate double jeopardy. Cf. United States v. Barrington, 806 F.2d 529, 534 (5th Cir. 1986) (rejecting double jeopardy challenge because § 2423(a) conviction was based on defendant's "causing others to travel" and was distinct from her conviction under the Travel Act, 18 U.S.C. § 1952(a)(3), for her own travel).

## II.    Congressional Intent

Weingarten next argues that even if convictions under § 2423(a) and 2423(b) are distinct for purposes of the Double Jeopardy Clause, Congress did not intend to permit consecutive sentences for convictions for violating both provisions based on the same underlying conduct, and that the two convictions must merge for sentencing purposes to avoid "pyramiding penalties" under Prince v. United States, 352 U.S. 322 (1957), and its progeny. When reviewing sentences, we review questions of law de novo. United States v. Bonilla, 618 F.3d 102, 108 (2d Cir. 2010).

7

Two offenses merge and may not be sentenced consecutively only when they are "structured in such a way as to criminalize successive stages of a single undertaking." United States v. Gore, 154 F.3d 34, 46 (2d Cir. 1998) (internal quotation marks omitted). In Prince, the Supreme Court held that the crime of entering a bank with intent to commit a robbery merges with the crime of robbery when the latter is consummated, because it is clear that the former is meant only to "cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime." 352 U.S. at 328.

As a preliminary matter, we note Prince's limited scope. Prince did not analyze the two counts under a double jeopardy analysis, but instead examined congressional intent in passing 18 U.S.C. § 2113, "a unique statute of limited purpose and an inconclusive legislative history." 352 U.S. at 325.[4] Section 2113 raises unique problems that "can and should be differentiated from similar problems . . . raised under other statutes," and the Court noted that Blockburger was not "particularly helpful" in reaching Prince's "narrow" holding. Id. at 325 & n.4; see also Gore v. United States, 357 U.S. 386, 391-92 (1958) (declining to apply Prince and noting that "it suffices to say that the

---

[4] In effect, the Supreme Court interpreted the relevant language of § 2113 as an extension of the traditional crime of attempt, and found that the crime of entering a bank with intent to commit a felony merges with the completed offense (if the felony is indeed completed), in much the same way that an attempt traditionally merges with the completed crime, because every successful crime necessarily encompasses an attempt to commit it. See, e.g., United States v. Madonna, 582 F.2d 704, 705 (2d Cir. 1978) (noting that "[a]n attempt merges into the completed crime"); United States v. Moss, 562 F.2d 155, 159 (2d Cir. 1977) (same).

Court was dealing there with a unique statute of limited purpose" (internal quotation marks omitted)). Unsurprisingly, given this cautionary language, we have extended Prince only to a limited number of statutes, including possession with intent to distribute and distribution where "the distribution itself is the sole evidence of possession," as the former provision seeks "to penalize possession with intent to distribute in cases involving an unconsummated distribution of a controlled substance," United States v. Gore, 154 F.3d at 46-47 (internal quotation marks omitted), and possession of a controlled substance on board an aircraft and illegal importation, United States v. Valot, 481 F.2d 22, 27 (2d Cir. 1973).

Prince's limited rule is inapplicable here, where the two offenses are distinct crimes and cannot be characterized as a preliminary step and a consummated act. Instead, each offense can be completed without contemplation of the other. In such a situation, Prince does not apply, and Blockburger is the appropriate means to examine whether Congress intended to impose multiple penalties on a defendant for the same underlying conduct.[5]

---

[5] Weingarten's reliance on United States v. Zvi, 168 F.3d 49 (2d Cir. 1999), is likewise unpersuasive. In Zvi, we held that the two statutory provisions at issue, which criminalized domestic and international money laundering, did not satisfy the Blockburger test and were multiplicitous because the elements of one charge were "subsumed" within the other. Id. at 57. Additionally, to the extent that Zvi suggested that "sometimes the facts at hand" may require a finding of multiplicity, id., such an approach would be inconsistent with United States v. Dixon, 509 U.S. 688 (1993), which overruled the fact-based "same-conduct" test articulated in Grady v. Corbin, 495 U.S. 508, 521-22 (1990), and restored the Blockburger "same-elements" test. See Basciano, 599 F.3d at 198 ("[T]he critical double jeopardy inquiry is not factual, i.e., whether the same conduct is at issue in charges brought under different statutes, but legal, i.e., whether the 'offense'

9

## III.     Increased Sentence on Resentencing

Weingarten raises a number of additional challenges to his new sentence, all predicated on the notion that, even though his original sentence and new sentence both amounted to an effective sentence of thirty years' imprisonment, the new sentence should nevertheless be treated as an increased sentence.  The government does not dispute that Weingarten's new sentence should be treated as more severe.  Under the "remainder aggregate" analysis outlined in United States v. Markus, when reviewing a sentence imposed on remand after one or more counts have been reversed, we compare the defendant's new sentence to his previous sentence *without the vacated count(s)*.  603 F.2d 409, 413 (2d Cir. 1979) (holding that to compare severity of sentences, "the proper procedure is first to disregard the sentence originally imposed [on the dismissed count] and then compare the total remaining sentence imposed [on the remaining counts] with the petitioner's present position"); see also United States v. Vontsteen, 950 F.2d 1086, 1093 (5th Cir. 1992).  Here, disregarding the vacated consecutive ten-year sentence on Count Three, the initial sentence would have totaled only twenty years.  Weingarten's reimposed thirty-year sentence must thus be considered more severe.

Weingarten's various attacks on that sentence are rooted in two distinct doctrines.  First, Weingarten relies on United States v. Pisani, 787 F.2d 71 (2d Cir. 1986), which,

---

– in the legal sense, as defined by Congress – complained of in one count is the same as that charged in another." (internal quotation marks omitted)).  It makes no difference that the same conduct underlies multiple counts of Weingarten's indictment, so long as the statutes proscribe distinct offenses.

without citing to a specific constitutional or legal principle, appears to limit a district court's authority (at least in the circumstances presented in that case) to impose an increased sentence on one count after vacatur of a different count.[6] Second, Weingarten cites the rule of North Carolina v. Pearce, 395 U.S. 711 (1969), which protects a defendant who has successfully challenged his conviction on appeal against a higher sentence imposed by a vindictive judge following a new trial and conviction to punish the defendant for his successful appeal, in violation of his due process rights.[7]

In addressing the effect of these doctrines, we must also take full account of the requirement that when resentencing a defendant after a remand, as at an initial sentencing, the district court is required to consider all the factors set forth in 18 U.S.C. § 3553(a) and "make an individualized assessment based on the facts presented" at a sentencing hearing. Gall v. United States, 552 U.S. 38, 50 (2007). Both at the initial sentencing and on remand, an appropriate sentence is one based on the totality of the relevant conduct, and

_____

[6] While Weingarten concedes that he did not make an argument pursuant to Pisani below, we exercise our discretion to review the district court's sentence in this respect for plain error. See United States v. Gore, 154 F.3d at 41 (noting that "issues not intentionally relinquished or abandoned but nevertheless not raised [below] – that is, forfeited issues – may be reviewed for plain error").

[7] Our concern about deterring appeals was also articulated in United States v. Bohn, which emphasized that increased sentences on remand must not be "so severe as to create an undue risk of deterring others from subsequent challenges." 959 F.2d 389, 395 (2d Cir. 1992); see also United States v. Versaglio, 85 F.3d 943, 949 (2d Cir. 1996). While the parties treat Bohn as defining a second step in the Pisani inquiry, we think that the case is best understood as addressing a due process issue under Pearce. See Pearce, 395 U.S. at 725 ("[S]ince the fear of . . . vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process . . . requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.").

11

on the character of the accused. As we noted in United States v. Quintieri, "[a] district court's sentence is based on the constellation of offenses for which the defendant was convicted and their relationship to a mosaic of facts, including the circumstances of the crimes, their relationship to one another, and other relevant behavior of the defendant." 306 F.3d 1217, 1227 (2d Cir. 2002). When part of a conviction is vacated and the case is remanded for resentencing, "the constellation of offenses of conviction has been changed." Id. at 1227-28. "For the district court to sentence the defendant accurately and appropriately, it must confront the offenses of conviction and facts anew," id. at 1228, and "must reconsider the sentences imposed on each count, as well as the aggregate sentence," United States v. Rigas, 583 F.3d 108, 118 (2d Cir. 2009). We have explained that if the vacatur of a count of conviction has altered the "factual mosaic related to" the remaining counts, on remand "the court must reconsider the sentence imposed on the count or counts affected by the vacatur . . . as well as on the aggregate sentence, in light of the sentencing factors in § 3553(a)." Id. at 118-19 (internal quotation marks omitted). On the other hand, if the facts relating to a count of conviction have not changed, "no further proceeding as to that count is necessary, *except to the extent it affects the aggregate sentence*." Id. at 119 (emphasis added). Ultimately, "[t]he balance between affording the sentencing judge appropriate leeway to refashion a proper sentence and unduly deterring challenges to unlawful components of a sentence can best be struck by sensitive line-drawing between permissible and impermissible resentencings." Bohn, 959 F.2d at 395.

After carefully considering Weingarten's arguments in light of these various concerns, we find none of his arguments persuasive.

A.    Pisani Is Inapplicable to Resentencing on Related Counts

In Pisani, we addressed a specific concern about increasing a sentence for one crime after a sentence for a distinct, independent crime has been vacated. Pisani was originally convicted of various counts of mail fraud and tax evasion. The mail fraud counts were based on two separate schemes, one relating to the use of political campaign funds for personal expenses, and the other relating to fraud in connection with an escrow account Pisani maintained for a client in his law practice; the tax counts were based on the failure to report income derived from his personal use of the campaign funds. See United States v. Pisani, 773 F.2d 397, 401 (2d Cir. 1985). We reversed and dismissed the campaign fund mail fraud counts, and vacated the related tax convictions, but affirmed the conviction and sentence on the independent mail fraud charge arising from the escrow fraud. Id. at 411. The government sought rehearing, seeking vacatur of the entire judgment, on the theory that the district court should be permitted to impose an enhanced sentence on the escrow fraud count now that the convictions on the other charges had been vacated. In denying the application in a written opinion, 787 F.2d 71, we stressed the unfairness of increasing a sentence on a remaining, unrelated count that had been joined to the vacated counts of conviction solely as a matter of trial convenience, id. at 76, reasoning that the sentence on the remaining count was presumably "fairly determined at the time it was imposed," id. Had the government made a different tactical choice and

13

indicted and tried the two sets of charges separately, resulting in separate judgments of conviction, the sentence on one set of charges would not be open to reconsideration after the reversal of separate convictions and sentences resulting from a separate trial and conviction for the other, unrelated offenses.

We have limited the application of Pisani "to the context of unrelated counts." United States v. Vasquez, 85 F.3d 59, 61 (2d Cir. 1996) (remanding for resentencing on remaining narcotics counts after vacatur of firearm conviction); see also United States v. Rosario, 386 F.3d 166, 170 (2d Cir. 2004) (holding that "in some circumstances, a sentence on one count may be increased after the sentence on a similar or related count has been vacated on appeal"). While Weingarten argues that his counts are unrelated because "related" counts are only those that mandate consecutive sentences, that argument has no support in our case law or in the reasoning of Pisani. Pisani involved a diverse set of crimes based on entirely distinct behavior that were joined as "a matter of trial convenience." 787 F.2d at 75-76 (noting that campaign-fund mail fraud and tax charges were unrelated to the law-practice mail fraud charges).

Here, all five counts are integrally related and concern the same underlying pattern of conduct: the physical, emotional, and sexual abuse by defendant of his minor daughter lasting more than six years. As the district court described it, "[t]he essence of the case is six years, more than six years of grotesque sexual abuse of your own daughter." The severity of the sentence originally imposed was justified by the pattern of Weingarten's physical and sexual abuse of his daughter over a lengthy period of time. In any sensible

14

evaluation of the sentence to be imposed on this defendant, it is the extent and duration of the repeated rapes and brutality to which he subjected his victim on three continents over six years, not the specific number of international flights in violation of particular federal statutes, that is relevant. As the district court made clear at Weingarten's resentencing, the specific conduct underlying Count Three did not account for a particular increment of the sentence, which was based on the overall pattern of abuse. In Pisani, the harms inflicted by the different charged schemes were distinct, and it was therefore reasonable to presume that the appropriate sentence for the escrow fraud was separately determined from the appropriate sentence for the campaign fund fraud. Here, in contrast, the harm inflicted on the victim stemmed from a single pattern of conduct, to which the specific counts of conviction were largely incidental. A finding that Weingarten's counts of conviction are *unrelated* would make no sense, given that the sentences were clearly based on an overall pattern of abuse, and the structural unfairness that Pisani addressed is therefore not at issue.[8]

---

[8] Moreover, Pisani was decided in a different procedural posture than this one. In Pisani, we were not addressing a claim that a district court's sentence on remand violated a defendant's rights. Rather, we were simply deciding whether to exercise our discretion, after determining that certain counts of conviction needed to be vacated, to vacate the entire judgment or to vacate only the defective counts, leaving the affirmed counts unaffected. 787 F.2d at 72. We chose the latter course. Here, we have already exercised that discretion differently, remanding "for resentencing on those affirmed counts of conviction." Weingarten, 632 F.3d at 62. In other words, we have already decided that, on the facts of this case, the remedy on remand is precisely the relief requested by the government in Pisani.

15

B.      There is No Danger of Vindictiveness on the Facts of This Case

Pearce "applied a presumption of vindictiveness" to increased sentences after a successful appeal, "which may be overcome only by objective information in the record justifying the increased sentence." United States v. Goodwin, 457 U.S. 368, 374 (1982). The presumption applies only where there is a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Alabama v. Smith, 490 U.S. 794, 799 (1989) (alteration, citation, internal quotation marks omitted). We have previously found no reasonable likelihood of vindictiveness where the sentencing court "predicated its increased sentence on events which occurred subsequent to the original sentencing proceeding," United States v. Bryce, 287 F.3d 249, 257 (2d Cir. 2002), or on intervening changes in sentencing law, United States v. Singletary, 458 F.3d 72, 78-79 (2d Cir. 2006).

Weingarten argues that the presumption applies here because there was no intervening change in circumstances between his two sentencings, as no new conduct came to light and the sentencing laws did not change. However, Weingarten ignores one important change in circumstances: the vacatur of Count Three, and the consequent change from a sentence based on five counts to a sentence based on four. Nothing in Pearce suggests that intervening changes in law or conduct by the defendant are the *only* possible intervening changes in situation that could make a presumption of vindictiveness inapplicable.

Like Pisani, Pearce involved facts that are entirely distinguishable from those we face here. Pearce examined a resentencing *on the same count* after a new trial. The

16

Supreme Court therefore did not face in that case the issue before us now: whether the imposition of the same sentence on remand after the vacatur of a count that is part of a single pattern of abusive behavior warrants a presumption of vindictiveness because of the increase in the sentences imposed on one or more remaining counts. See United States v. Atehortva, 69 F.3d 679, 685 (2d Cir. 1995) (noting that defendant "overlooks the fact that, unlike in . . . Pearce, this case does not involve a retrial resulting in the same conviction," but involved a resentencing "based on a conviction solely on one count instead of three").

We see no basis in Pearce, or in any other case of ours or the Supreme Court's, for imposing a presumption of vindictiveness on these facts. We acknowledged as much in United States v. Hertular, where we vacated one of the defendant's four counts and remanded for a de novo sentencing, even though the "factual mosaic" was "little altered," so that the district court could "decide, in the first instance, whether a conviction on three rather than four counts affects its assessment of the sentencing factors detailed in 18 U.S.C. § 3553(a)." 562 F.3d 433, 446 (2d Cir. 2009); see also United States v. Rigas, 583 F.3d 108, 118-19 (2d Cir. 2009) (remanding for de novo resentencing after vacatur of one count). As we warned in Atehortva, "[w]hen a defendant challenges convictions on particular counts that are inextricably tied to other counts in determining" his sentence, "the defendant assumes the risk of undoing the intricate knot of calculations should he succeed." 69 F.3d at 685. In Pearce, the trial court imposed a harsher sentence for the same conduct after a reversal, remand, and reconviction, thus raising a legitimate inference – absent other explanation – that the defendant was being punished for having

17

appealed. In this case, in contrast, the district court imposed the *same* effective sentence on remand. Where one or more of several related counts have been vacated, and the district court on resentencing has increased the sentence on the remaining, related counts to maintain the same aggregate sentence as before, no presumption of vindictiveness applies. The reimposed sentence is easily explained on grounds other than vindictiveness; on the facts of this case it would be surprising if the district court had substantially lowered the sentence in light of the vacatur of one of the interstate travel counts.[9]

The inapplicability of a presumption of vindictiveness, however, does not end our due process inquiry. We next inquire whether defendant has demonstrated actual vindictiveness by the sentencing judge. See Alabama v. Smith, 490 U.S. at 799 ("Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness . . . .").

We find no evidence of judicial vindictiveness in the record before us. First, there is no indication that the initial choice of the three counts that would run consecutively was anything other than a matter of convenience, because they were the first three counts in the indictment. Nor is there any indication that the initial sentence was thirty years because there were three international trips, or that the sentence was dependent on the specific trip covered by Count Three in any way. This is far from the hypothetical

---

[9] Even "assuming *arguendo* that the presumption does apply, we are satisfied that the District Court's explanation of the higher sentence upon remand rebuts any potential presumption of vindictiveness," United States v. Singletary, 458 F.3d 72, 79 (2d Cir. 2006), for the reasons detailed in the rest of this section.

discussed in United States v. Gelb, 944 F.2d 52, 60 (2d Cir. 1991), where we noted that we would question "a judge who had determined that a particular offense merited slight punishment," then "revised that punishment to compensate for the disallowance of a penalty imposed for wrongdoing of a different sort." The district court here explicitly stated that it based Weingarten's original sentence "on what the defendant did – not the particular configuration of counts."

Second, the district court performed a de novo analysis at Weingarten's resentencing and adequately justified the new sentence on the record. It set forth its consideration of the 3553(a) factors, as well as the arguments presented by both sides. The record affirmatively belies any suggestion of vindictiveness: the district court took Weingarten's advanced age into account, and "deliberately imposed a sentence that would give him hope of not dying in jail." The district court also explicitly considered Weingarten's health issues, conditions of incarceration, and the support the defendant had in the community and among some of his children.

Third, while the district court may, under the remainder aggregate rule, be deemed to have increased the sentence, the total time Weingarten will serve is the same under the new sentence as under the previous one. The district court's conclusion that its initial aggregate sentence was still appropriate is understandable, given its finding that the factual mosaic and the "central factor[s]" that "[bore] on the imposition o[f] the appropriate sentence remain[ed] the same." While we can imagine a record that would support a finding of vindictiveness where the district court imposed the same total sentence after the reversal of certain counts reduced the extent of the harm legally

19

attributable to the defendant, this is not that case.  Cf. Greenlaw v. United States, 554 U.S. 237, 253-54 (2008) (recognizing with approval the practice, following vacatur of some counts of conviction on appeal, of increasing the defendant's sentence on remaining counts to yield an aggregate sentence equal to the original aggregate imposed).

As "nothing in the record remotely suggests vindictiveness on the part of the District Court," we "have no difficulty in concluding that the 'evil' that [Pearce] is intended to avert – enhanced sentences born of a sentencing judge's vindictiveness following a successful appeal – is simply not present in this case."  Singletary, 458 F.3d at 78-79.  We therefore conclude, on the facts of this case, that due process was not violated when the defendant was resentenced to the same aggregate total term of imprisonment after the vacatur of one related count of conviction, and the district court adequately justified its new sentence.  Cf. United States v. Chaklader, 232 F.3d 343, 347 (2d Cir. 2000) (affirming new sentence that gave same aggregate sentence of 51 months, but reapportioned sentence between the underlying offenses and the sentencing enhancement); United States v. Hornick, 963 F.2d 546, 547 (2d Cir. 1992) (affirming new sentence that gave same aggregate sentence of 133 months after enhancement was vacated, where the original sentence "was . . . a reflection of the district court's assessment of the aggregate gravity of Hornick's crimes, not a sum arrived at through discrete consideration of distinct crimes").

## CONCLUSION

We have considered Weingarten's remaining arguments and find them to be without merit. Accordingly, for the reasons stated above, we affirm the judgment of the district court.